IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| QUENTIN I. JACKSON, | ) | 1:06-cr-00134-AWI |
| | ) | (1:10-cv-02224-AWI) |
| Petitioner, | ) | |
| | ) | ORDER DENYING MOTION TO |
| v. | ) | VACATE, SET ASIDE OR |
| | ) | CORRECT SENTENCE |
| UNITED STATES OF AMERICA, | ) | |
| | ) | (Doc. 107) |
| Respondent. | ) | |
| | ) | |
| _____ | ) | |

## I. INTRODUCTION

Petitioner Quentin I. Jackson ("Petitioner") has filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. For reasons discussed below, the motion shall be denied.

## II. FACTS AND PROCEDURAL BACKGROUND

On December 6, 2007, Petitioner was found guilty by a jury on one count of attempted bank robbery, three counts of armed bank robbery, four counts of carrying a firearm during a crime of violence and one count of interference with commerce by robbery. On March 3, 2008, Petitioner was sentenced to a total of 1070 months imprisonment followed by a 60-month term of supervised release. On

November 29, 2010, following an unsuccessful appeal,[1] Petitioner filed this motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of trial and appellate counsel, prosecutorial and judicial misconduct and lack of jurisdiction by the trial court. The government filed its opposition to Petitioner's section 2255 motion on January 18, 2011.

## III. LEGAL STANDARD

" 'In general, [28 U.S.C.] § 2255 provides the exclusive procedural mechanism by which a federal prisoner may test the legality of his detention.' " *Ivy v. Pontesso,* 328 F.3d 1057, 1059 (9th Cir. 2003) (quoting *Lorentsen v. Hood,* 223 F.3d 950, 943 (9th Cir. 2000)). Under section 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum imposed by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.*, § 2255(b). "In determining whether a hearing and findings of fact and conclusions of law are required, '[t]he standard essentially is whether a movant has made

---

[1] *See U.S. v. Jackson,* 334 Fed.Appx. 119 (9th Cir. 2009)(unpublished)(affirming conviction).

2

specific factual allegations that, if true, state a claim on which relief could be granted.' Under this standard, a district court may summarily dismiss a § 2255 motion only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.' " *U.S. v. Withers,* 638 F.3d 1055, 1062-63 (9th Cir. 2011) (quoting *United States v. Schaflander,* 743 F.2d 714, 717 (9th Cir. 1984)) (internal citations omitted).

## IV. DISCUSSION

*A. Ineffective assistance of trial counsel –* Petitioner raises various claims alleging ineffective assistance of trial counsel. "The Sixth Amendment guarantees criminal defendants the effective assistance of counsel." *Yarborough v. Gentry,* 540 U.S. 1, 5, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003). "In order to establish ineffective assistance of counsel, a petitioner must prove both deficient performance by his counsel and prejudice caused by the deficiency. To demonstrate deficient performance [the petitioner] must show that counsel's performance 'fell below an objective standard of reasonableness' based on 'the facts of the particular case [and] viewed as of the time of counsel's conduct.' " *Gonzalez v. Wong,* 667 F.3d 965, 987 (9th Cir. 2011) (quoting *Strickland v. Washington,* 466 U.S. 668, 688-90, 104 S.Ct. 2052, 80 L.Ed.2dd 674 (1984)). The court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. The [petitioner] bears the burden of showing 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [petitioner] by the Sixth Amendment.' " *James v. Ryan,* 679 F.3d 780 (9th Cir. 2012) (quoting *Strickland, supra,* at 687, 689). "In order to establish prejudice [the petitioner] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Gonzalez, supra,* 667 F.3d at 987 (quoting *Strickland, supra,* 466 U.S. at 694). "Because failure to meet either prong is fatal to [the petitioner's] claim, there is no requirement that [the court] 'address

3

both components of the inquiry if the defendant makes an insufficient showing on one.' " *Id*.

*1. Failure to object to jury instructions regarding reasonable doubt* – Petitioner first contends trial counsel was ineffective for failing to object to the jury instructions regarding reasonable doubt. In particular, Petitioner contends counsel should have objected because the trial court gave conflicting instructions to the jury by alternately telling the jury that the government was and was not required to prove guilt beyond a reasonable doubt. "When, as here, the basis for the ineffective assistance claim is the failure to raise an issue, we must look to the merits of the omitted issue. If the omitted issue is without merit, then counsel's failure to raise it is not prejudicial, and thus is not ineffective assistance." *U.S. v. Orange,* 447 F.3d 792, 797 (10th Cir. 2006) (citing *Jones v. Gibson,* 206 F.3d 946, 959 (2000)). Having reviewed the record in its entirety, the Court finds no merit to Petitioner's contention. The reasonable doubt instructions given to the jury by the trial court read as follows:

> "The government has the burden of proving each element of each of the charges beyond a reasonable doubt. [¶] The standard of proof, proof beyond a reasonable doubt, is proof that leaves you firmly convinced that the defendant is guilty. It is not required that the government prove guilt beyond all possible doubt.
>
> A reasonable doubt is a doubt based upon reason and common sense and is not based purely on speculation. [¶] It may arise from a careful and impartial consideration of all the evidence or from lack of evidence. If, after a careful and impartial consideration of all the evidence, you are not convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant not guilty.
>
> On the other hand, if, after a careful and impartial consideration of all the evidence, you are convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant guilty."

These instructions accurately stated the law on reasonable doubt. *See U.S. v. Velasquez,* 980 F.2d 1275, 1277-79 (9th Cir. 1992) (approving nearly identical instruction). Petitioner has not identified – and the Court has been unable to locate – any part of the record where the trial court allegedly gave erroneous or conflicting instructions on reasonable doubt. Accordingly, counsel's failure to object to the reasonable doubt instructions could not have constituted ineffective assistance of counsel.

*2. Failure to object to statements from juror* – Petitioner further contends trial counsel was

4

ineffective for failing to object to statements made by one of the jurors during the jury selection process. Not so. First, Petitioner has not identified the particular juror in question, let alone the statements he or she allegedly made. Second, Petitioner has provided no argument or evidence to explain how counsel's failure to object to the statements might have constituted deficient representation causing prejudice to Petitioner. Accordingly, Petitioner's contention is meritless.

***3. Failure to challenge composition of the jury*** – Petitioner further contends trial counsel was ineffective for failing "to make objection as to the make up of the jury after defendant informed attorney of his concerns, and failed to follow up on claim but only telling the court that [Petitioner] is expressing concern that there wasn't one Black on the panel or in the jury pool, with the court just saying understood is there anything else which attorney only stated no. Not questioning or really addressing [Petitioner's] concerns or bringing up what was said between attorney and [Petitioner] concerning the jury not being a fair cross section of the community and not of his peers." Having reviewed the record and all competent and admissible evidence submitted, the Court does not agree.

To show counsel's failure to object to the composition of the jury constituted deficient performance under *Strickland*, Petitioner must demonstrate that the composition violated the fair cross-section requirement. "[T]he fair-cross-section requirement [is] fundamental to the jury trial guaranteed by the Sixth Amendment . . . . The purpose of a jury is to guard against the exercise of arbitrary power – to make available the commonsense judgment of the community as a hedge against the overzealous or mistaken prosecutor and in preference to the professional or perhaps overconditioned or biased response of a judge. *Duncan v. Louisiana,* 391 U.S. [145,] 155-156, 88 S.Ct. [1444,] 1450-1451 [(1968)]. This prophylactic vehicle is not provided if the jury pool is made up of only special segments of the population or if large, distinctive groups are excluded from the pool." *Taylor v. Louisiana,* 419 U.S. 522, 530, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).

"In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the

community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). In this case, the first element of the *Duren* test is undoubtedly met: African-Americans and other ethnic minorities are considered distinctive groups in the community. *See U.S. v. Cannady,* 54 F.3d 544, 547 (9th Cir. 1995).

Problematically for Petitioner, the second and third elements of the *Duren* test are not met. Ninth Circuit authority "has settled on 'absolute disparity' – the difference between the percentage of the distinctive group in the community and the percentage of that group in the jury pool – as the appropriate measure of the representativeness of the jury pool." *U.S. v. Rodriguez-Lara,* 421 F.3d 932, 943 (9th Cir. 2005) (citing *U.S. v. Sanchez-Lopez,* 879 F.2d 541, 547 (1989)). "For example, if Hispanics are 20% of the community and 5% of the jury pool, the absolute disparity is 15% (20% minus 5%)[.]" *Id.* at 944 n. 10. Courts "have declined to find underrepresentation of a distinctive group where the absolute disparity was 7.7% or lower, [citations], while [courts] have found a 15.4% absolute disparity sufficient . . . and cited with approval another circuit's recognition of the significance of a 14.1% disparity, [citations.]" *Id*. at 944. Petitioner provides no statistical evidence to show the Eastern District had a qualifying disparity between the percentage of eligible African-American jurors in the community and the percentage of African-Americans in the jury pool. Petitioner also provides no argument or evidence to suggest African-Americans were under-represented because they were being systematically excluded from the jury selection process. The fair cross-section requirement was not violated simply because there were no African-Americans in the jury. There is "no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." *Taylor, supra,* 419 U.S. at 538. "Defendants are not entitled to a jury of any particular composition" so long as "the jury wheels, pools of names, panels, or venires from which juries are drawn [do] not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Id*.

Absent evidence to support a prima facie case under *Duren*, Petitioner cannot show counsel had cause to inquire whether the jury pool fairly and reasonably represented distinctive community groups, including African-Americans, or whether African-Americans were systematically excluded from the selection process. Accordingly, counsel's failure to object to the racial makeup of the jury cannot be said to have been unreasonable, and Petitioner is not entitled to relief on such ground.

*4. Failure to introduce police reports* – Petitioner further contends trial counsel was ineffective because he failed to introduce into evidence certain police reports, which Petitioner contends were inconsistent with trial testimony provided by police officers and other government witnesses and could therefore have been used to impeach that testimony. The Court disagrees. Even assuming counsel's failure to introduce the reports fell below an objective standard of reasonableness, Petitioner has offered no argument or evidence to establish prejudice. Nothing suggests the reports were exculpatory or would have controverted the testimony of any witnesses. Petitioner's conclusory assertion that the reports were inconsistent with statements made at trial, without more, does not establish the reports would have been helpful to the defense, and is therefore insufficient to show the outcome would have been more favorable to Petitioner had counsel introduced the reports. Petitioner further contends that because the reports were not admitted into evidence, counsel was not properly prepared to cross-examine the government's witnesses. To the extent Petitioner intends to suggest counsel's failure to introduce the reports rendered counsel ineffective simply because counsel was unprepared for trial, the claim fails, as Petitioner has not explained how, had counsel introduced the reports, counsel would have prepared differently for cross-examination or modified his cross-examination strategy. Accordingly, the Court finds trial counsel's failure to introduce the police reports into evidence did not rise to the level of ineffective assistance.

Petitioner further contends counsel was ineffective for failing to introduce "police reports of another implicated in robbery in Modesto." Ordinarily, evidence revealing other legitimate suspects would tend to "substantially increase[ ] a reasonable juror's doubt of [a defendant's] guilt by

"weakening the prosecution's case and strengthening the defense's position that someone else committed" the crime, thereby establishing a reasonable probability the outcome of the trial would have been different. *D'Ambrosio v. Bagley,* 527 F.3d 489, 499 (6th Cir. 2008). Petitioner, however, has not described the contents of the reports, nor has he explained the extent to which these other, unidentified suspects were allegedly implicated. Therefore, the Court cannot conclude counsel's failure to introduce said reports constituted deficient representation causing prejudice to Petitioner.

***5. Failure to "obtain police report of surveillance tapes"*** – Petitioner further contends in cryptic fashion, "Attorney failed to obtain police report of surveillance tapes and that the suspect is shown in frames 661 through 666 so where is the surveillance tapes that was never shown in court for that of the charge of interference with commerce." Petitioner presumably intends to suggest counsel was ineffective for not moving to compel production of surveillance tapes from the government so that the defense could determine whether the footage was accurately described in police reports. Even assuming counsel's failure to compel production of surveillance tapes fell below an objective standard of reasonableness, the evidence of Petitioner's guilt was overwhelming. Absent argument or evidence to suggest the tapes were exculpatory, which was not provided here, counsel's failure to obtain the tapes (or reports of the tapes) could not have risen to the level of ineffective assistance.

***6. Failure to obtain cell phone records*** – Petitioner further contends trial counsel was ineffective for failing "to obtain cell phone records after stating he would get records to show where calls were made from on day and time of robbery." The Court does not agree. Even assuming counsel's failure to obtain the records somehow constituted deficient representation, Petitioner has provided no argument or evidence to suggest the records would have been exculpatory. Petitioner presumably intends to suggest the records would have established an alibi by showing calls were placed at locations away from the robberies while the robberies were being committed. Problematically for Petitioner, the records would more than likely have revealed only the numbers that were called and

the date and duration of the calls themselves. Although the location of the caller could conceivably have been determined through triangulation, the records would not have revealed the identity of the person who actually used the phone; at most the records might have shown a cell phone registered to Petitioner was in use in another location during the commission of the robberies. However, a cell phone does not always follows its subscriber. It can also be used by third parties. That is to say, Petitioner could have committed the crimes at the same time someone else was using his phone.

In any case, the evidence against Petitioner was overwhelming and more than sufficient for a jury to conclude Petitioner was guilty of the charged offenses. Witnesses who testified at trial positively identified Petitioner from photo lineups as the perpetrator of the robberies. Other witnesses testified they saw Petitioner's vehicles at the locations of the robberies. In light of this evidence, the Court finds no reasonable probability the jury's verdict would have been different had the records been introduced at trial. Absent argument or evidence to suggest that introduction of the records would somehow have caused the jury to acquit him of the charged offenses, which was not provided here, Petitioner cannot show prejudice from counsel's failure to obtain the records.

*7. Failure to conduct pre-trial investigation* – Petitioner further contends trial counsel was ineffective in failing "to do a full pre-trial investigation whereas if attorney had then he would have traced the money order receipts that he was given at the time of discovery." Petitioner has provided no argument or evidence to explain what physical or testimonial evidence related to the money order receipts might have implicated counsel's duty to trace them. The receipts, inasmuch as the Court can discern from the motion, have no probative value on Petitioner's guilt or innocence. Thus, Petitioner cannot show counsel's failure to trace the receipts was deficient or resulted in prejudice.

*8. Failure to suppress identification from photo array* – Petitioner further contends trial counsel was ineffective in failing to file a pretrial motion to suppress an out-of-court identification of Petitioner by a witness. Petitioner contends the identification should have been suppressed because

9

the identification procedures were unduly suggestive and created a significant risk of mistaken identification. "To show prejudice under *Strickland* from failure to file a motion, [the petitioner] must show that (1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him." *Wilson v. Henry,* 185 F.3d 986, 990 (9th Cir. 1999) (citing *Kimmelman v. Morrison,* 477 U.S. 365, 373-74, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)).

"Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." *Neil v. Biggers,* 409 U.S. 188, 198, 98 S.Ct. 375, 34 L.Ed.2d 401 (1972). "Unnecessary suggestiveness," however, does not "alone require[ ] the exclusion of [identification] evidence." *Id*. at 198-99. Rather, "the central question [is], whether under the 'totality of the circumstances[,]' the identification was reliable even though the confrontation procedure was suggestive." *Id*. at 199. "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id*. at 199-200. Petitioner provides no argument or evidence to suggest the identification at issue was unreliable in light of the foregoing factors. As a result, Petitioner cannot show a motion to suppress the identification would reasonably have been granted by the trial court, let alone resulted in an outcome more favorable to him. Accordingly, counsel's failure to file such a motion did not constitute ineffective assistance.

**9. Attorney bias** – Petitioner further moves for relief on ground of attorney bias, contending trial counsel "showed signs of being prejudice [sic] in statements that were made over [Petitioner's] objections of the way he was handling the case and making statements 'just tell him he knows he's GUILTY' that was for the interpreter to tell [Petitioner]." Petitioner, however, has not identified the

statements counsel allegedly made over Petitioner's objections of the way counsel was handling the case. Petitioner has also not identified – and the Court has been unable to locate – the part of the record where counsel allegedly told Petitioner "just tell him he knows he's guilty." Nevertheless, even assuming counsel made such a statement, Petitioner's claim of bias would not succeed.

The type of attorney bias resulting in prejudice to a defendant was illustrated in *Frazer v. U.S.,* 18 F.3d 778 (9th Cir. 1994). In *Frazer*, a section 2255 movant alleged ineffective assistance of counsel, claiming his appointed trial attorney had called him " 'a stupid nigger son of a bitch and said he hopes I get life. And if I continue to insist on going to trial I will find him to be very ineffective.' " *Id*. at 780. The Ninth Circuit reasoned: "If the Sixth Amendment itself protects an accused from a lawyer with a traditional conflict of interest, and from a lawyer who is asleep, completely disinterested, or so unprepared that his appearance is merely pro forma, surely it must protect the indigent from an appointed lawyer who calls him to his face a 'stupid nigger son of a bitch' and who threatens to provide substandard performance for him if he chooses to exercise his right to go to trial . . . . [S]uch a verbal assault is irreconcilable with (1) the duty of loyalty owed a client by his attorney, (2) the responsibility of providing meaningful assistance, and (3) the role of 'guiding hand' described in *Powell* [*v. Alabama*, 287 U.S. 45, 68-69, 53 S.Ct. 55, 77 L.Ed. 158 (1932)] by Justice Sutherland. *All* advice, assistance, and guidance provided after such an outburst would be fatally suspect, as would the 'willingness' of a defendant to follow the attorney's lead. Such a disrespectful and inappropriate eruption would signal and be tantamount to (unless somehow cured) a 'total lack of communication' far exceeding the parameters of any duty on the part of counsel to deliver to his client a 'pessimistic prognosis' of his legal position. [Citations.]" *Id.* at 783-84 (emphasis original). Accordingly, the court remanded for an evidentiary hearing because the facts alleged, "if proved, would render so defective the relationship inherent in the right to trial counsel . . . that [the movant] would be entitled to a new trial with a different attorney." *Id*. at 784.

Counsel's alleged statement "just tell him he know's he's guilty" falls far short of the statements made in *Frazer*. Petitioner has provided no argument or evidence to suggest counsel's

11

statement demonstrated an intent to undermine the defense or animus toward Petitioner. Absent some connection to specific incidents of deficient performance, which Petitioner has not established, the Court cannot conclude the statement reflected bias, let alone bias adversely affecting counsel's representation of Petitioner. Thus, Petitioner is not entitled to relief on ground of attorney bias.

***10. Trial counsel's conflict of interest*** – Petitioner further contends trial counsel had an actual conflict of interest that adversely affected counsel's representation of Petitioner and prejudiced the outcome of the proceedings. "An 'actual conflict' results when counsel 'actively represented conflicting interests.'" *Hovey v. Ayers,* 458 F.3d 892, 908 (2006) (quoting *Strickland, supra,* 466 U.S. at 692). "To establish ineffective assistance of counsel based on a conflict of interest, [petitioner] must show an actual conflict of interest that adversely affected counsel's performance . . . . [¶] . . . [¶] To show an actual conflict resulting in an adverse effect, [petitioner] must demonstrate 'that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'" *Id*. (quoting *United States v. Wells,* 394 F.3d 725, 733 (9th Cir. 2005)). Petitioner has not identified plausible strategies that might have been pursued but were not, nor has he identified any actual, legal conflicts of interest counsel may have had. Rather, inasmuch as the Court can discern from the pleadings, the conflict alleged by Petitioner refers to the conflict Petitioner had with counsel over how to strategize for trial. In particular, Petitioner appears to contend he wanted a continuance of the trial date so he could file a motion to suppress an out-of-court identification, but counsel simply requested a continuance while refusing to file the motion to suppress. Problematically for Petitioner, disagreements between client and counsel over trial strategy cannot support an ineffective assistance claim. *People v. Santos,* 741 F.2d 1167, 1169 (9th Cir. 1984) (per curiam). To the extent Petitioner intends to suggest counsel was ineffective *because* he failed to file a motion to suppress, the claim likewise fails. As the Court discussed in its analysis of claim #8 above, Petitioner provides no argument or evidence to suggest the identification at issue

12

was unreliable under the totality of the circumstances. Thus, Petitioner cannot show a motion to suppress the identification would reasonably have been granted by the trial court, let alone resulted in an outcome more favorable to him. Counsel, having investigated the facts before trial, presumably realized there was no reasonable possibility the identification would be suppressed because the matter would hinge on credibility, which the trial court would likely have resolved in favor of the witness, and the filing of a motion to suppress would therefore have been futile. Counsel's decision to abstain from filing a futile motion is a matter of professional judgment that does not fall below an objective standard of reasonableness. *See Lowry v. Lewis,* 21 F.3d 344, 346 (9th Cir. 1994).

***11. Lesser-included offenses*** – Petitioner further contends trial counsel were ineffective "for telling the jury that if they concluded that [Petitioner] was guilty of the other counts then convict him of the lesser count as well." Petitioner has not identified – and the Court has not found – any part of the record showing counsel made such a statement to the jury. Petitioner's contention is without merit.

***B. Prosecutorial misconduct*** – Petitioner further moves to vacate his sentence on ground of prosecutorial misconduct. As to this ground, Petitioner first contends prosecutors Sherrill Carvalho and Dawrence "Deuce" Rice improperly vouched for the credibility of the government's witnesses during their opening statement, closing argument and rebuttal. " 'The rule that a prosecutor may not express . . . his belief in the credibility of witnesses is firmly established.' [Citations.] 'Improper vouching occurs when the prosecutor places the prestige of the government behind the witness by providing personal assurances of the witness's veracity.' [Citation.] Improper vouching also occurs where the prosecutor suggests that the testimony of government witnesses is supported by information outside that presented to the jury. [Citation.] '. . . . A prosecutor may not, for instance, express an opinion of the defendant's guilt, denigrate the defense as a sham, implicitly vouch for a witness's credibility, or vouch for his or her own credibility." *U.S. v. Wright,* 625 F.3d 583, 610 (9th Cir. 2010). Having reviewed the record, the Court finds no support for Petitioner's characterization

1 | of Carvalho's opening, Rice's closing or Carvalho's rebuttal of defense counsel's closing argument. Carvalho and Rice did not opine as to the credibility of any witness, nor did they suggest the witnesses' testimony was supported by information not presented at trial. Rather, their statements to the jury simply involved references to the testimony and arguments that the testimony was consistent with the evidence presented. Petitioner has provided no authority – and the Court's research reveals no authority – to suggest such statements were improper as a matter of law.

Petitioner further contends the prosecutors knowingly used perjured testimony, alleging cryptically that "when witness testified of identification of suspect and of car where witness stated in police report of one kind of car and on stand when asked what kind of car witness then states color, make and model and remembers it from the front but didn't know if the suspect left the building, and that robber took between $100.00 to $150.00 where as in police report it was stated Mr. Burns the manager conducted an audit and that there was $477.00 taken." The Court does not agree. " '[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have effected [sic] the judgment of the jury.' " *U.S. v. Young,* 17 F.3d 1201, 1203 (9th Cir. 1994) (quoting *U.S. v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976)). This presupposes, of course, that the testimony was in fact false. *See id.* at 1203-1204; *see also U.S v. Croft,* 124 F.3d 1109, 1119 (9th Cir. 1997) (citing *Young, supra,* at pp. 1203-1204) ("Although the government may not convict on the basis of false testimony . . . , even if the prosecution offered the evidence in good faith, [the appellant] has not shown such false testimony was used here"). Petitioner has provided no argument or evidence to suggest this was the case with the testimony at issue here.

Instead, Petitioner essentially argues that the testimony was perjurious because it was not consistent with statements the witnesses may have given earlier to the police. Problematically for Petitioner, "[t]he fact that a witness may have made an earlier inconsistent statement, or that other witnesses have conflicting recollections of events, does not establish that the testimony offered at trial was false." *Croft, supra,* 124 F.3d at 1119 (9th Cir. 1997); *accord U.S. v. Zuno-Arce,* 44 F.3d

1420, 1423 (9th Cir. 1995). Consequently, inconsistencies alone do not make testimony perjurious, let alone show the government knowingly put forth perjured testimony. *See U.S. v. Necoechea,* 986 F.2d 1273, 1281 (9th Cir. 1993). In any case, the Court has reviewed the record in its entirety and finds no support for Petitioner's characterization of the various witnesses' trial testimony.

As to testimony regarding the description of the vehicles in which Petitioner was allegedly seen at the time of the various robberies, the only witnesses to whom Petitioner could conceivably have been referring are Monica Ruiz and Irma Robinson. Ruiz, who worked at the California Skin Laser Center behind Delta National Bank, testified she saw Petitioner getting into "an early 90s to mid-90s Oldsmobile" around the time of the Delta National Bank robbery. Detective Mark Reynolds later testified that when Ruiz gave a statement for his report (which Reynolds referred to directly on the stand), Ruiz described the vehicle "as an early to mid-90s, dark blue four-door Oldsmobile." Robinson, who was working at the Stockton Shell gas station at the time it was allegedly robbed by Petitioner, testified that she saw Petitioner pull up in "a primer-gray car. It was like a Maxima or a Nissan. It was kind of like a station wagon." Detective Ken Tam later testified that when he showed photos of Petitioner's Nissan Maxima to Robinson, Robinson stated she was "100 percent sure that the Nissan . . . was the same vehicle that the robber used." Thus, there were no inconsistencies between Ruiz's and Robinson's trial testimony and their previous statements. Robinson further testified that the individual who robbed the Shell station took between $100 and $150 dollars. Petitioner has not identified – and the Court has been unable to locate – testimony showing the station manager conducted an audit and found there was $477.00 taken, as Petitioner contends, but even assuming Robinson's testimony conflicted with prior accounts of money reported missing, such conflict would not establish Robinson's testimony was perjurious. *See Croft, supra,* 124 F.3d at 1119. Accordingly, Petitioner's allegations of prosecutorial misconduct are meritless.[2]

---

[2] Petitioner further contends trial counsel was ineffective because he failed to introduce into evidence police reports allegedly establishing the claimed inconsistencies between the witnesses' trial testimony and their previous statements to law enforcement. Given the Court has found no inconsistencies, failure to introduce the reports could not have constituted ineffective assistance.

***C. Judicial misconduct* –** Petitioner further moves to vacate his sentence on ground of judicial misconduct, contending the trial court gave conflicting jury instructions as to reasonable doubt and failed to resolve a conflict between Petitioner and defense counsel. The Court has already addressed the contention conflicting jury instructions were given as to reasonable doubt and found it to be without merit. The contention the trial court failed to resolve a conflict between Petitioner and counsel is similarly without merit, for two reasons. First, Petitioner has failed to explain the extent of the alleged conflict. Second, Petitioner has provided no authority – and the Court's research reveals no authority – to suggest a trial court's failure to resolve differences between a defendant and his attorney constitutes judicial misconduct entitling the defendant to set aside his sentence.

To the extent Petitioner intends to suggest the conflict he had with counsel rendered counsel ineffective, the claim fails. In *U.S. v. Moore,* 159 F.3d 1154 (9th Cir. 1998), the Ninth Circuit held that a complete breakdown of the attorney-client relationship resulting from an irreconcilable conflict between a defendant and his or her attorney *could* form the basis of a claim for ineffective assistance of counsel. *Id*. at 1158-61. But the alleged conflict between Petitioner and defense counsel, inasmuch as Petitioner has presented in his motion, bears no resemblance to the conflict found to be irreconcilable in *Moore*. The attorney-client relationship in *Moore* was marred by an " 'atmosphere of mistrust[ ] [and] misgivings[.]' " *Id*. at 1159. The defendant testified, among other things, that his attorney failed to timely inform him of the government's rejection of his counteroffer to the government's plea offer; that he and the attorney had a " 'serious argument' " over the attorney's handling of the case; and that he was enraged after the attorney failed to meet with him before the government's plea offer expired or inform him that a co-defendant had accepted a plea agreement. *Id*. The defendant further claimed "he was denied an opportunity to review the proposed plea bargain because [the attorney] would not read it to him in jail," and that the attorney "admitted to having done nothing but interview [the defendant's] son . . . ." *Id.* Counsel testified the defendant had physically threatened him and threatened to sue him for malpractice. *Id*. at 1159, 1160.

1  Petitioner has provided no argument or evidence to suggest the conflict here was similar.

2  To the extent Petitioner intends to suggest defense counsel had an actual conflict of interest that adversely affected counsel's representation of Petitioner and prejudiced the outcome of the proceedings, the claim likewise fails. Again, "[a]n 'actual conflict' results when counsel 'actively represented conflicting interests.' " *Hovey, supra,* 458 F.3d at 908 (quoting *Strickland, supra,* 466 U.S. at 692). "To establish ineffective assistance of counsel based on a conflict of interest, [the petitioner] must show an actual conflict of interest that adversely affected counsel's performance . . . . [¶] . . . [¶] To show an actual conflict resulting in an adverse effect, [the petitioner] must demonstrate 'that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.' " *Id*. (quoting *United States v. Wells,* 394 F.3d 725, 733 (9th Cir. 2005)). Petitioner has not identified plausible strategies or tactics that might have been pursued but were not, nor any actual, legal conflicts of interest counsel may have had. Even if the Court were to accept the proposition counsel had an actual conflict, Petitioner has presented no argument or evidence to suggest the conflict adversely affected counsel's representation of Petitioner. As a result, Petitioner cannot establish ineffective assistance of counsel based on a conflict of interest.

***D. Ineffective assistance of appellate counsel –*** Petitioner further moves to vacate his sentence on ground of ineffective assistance of appellate counsel, contending counsel was ineffective in failing to raise prosecutorial or judicial misconduct as a basis for appeal. The Court has already addressed Petitioner's claims of prosecutorial and judicial misconduct and found them to be without merit. Accordingly, appellate counsel could not have been ineffective in failing to allege prosecutorial or judicial misconduct on appeal. Petitioner further contends counsel was ineffective in failing to advise Petitioner of his ability to seek certiorari review, presumably of the Ninth Circuit's memorandum disposition affirming his conviction (*see Jackson, supra,* 334 Fed.Appx. 119), by the Supreme Court. The Court does not agree. Even assuming counsel failed to inform Petitioner of

his right to seek certiorari in violation of Ninth Circuit Rule 4-1,[3] Petitioner must nonetheless show he was prejudiced by counsel's inaction. That was not done here. Petitioner does not argue (or even allege) prejudice and, perhaps more importantly, provides no argument or evidence to suggest he would have had meritorious claims to raise in a petition for writ of certiorari. Any alleged failure to inform Petitioner of his right to seek certiorari cannot rise to the level of ineffective assistance of counsel under *Strickland* where Petitioner is not prejudiced by counsel's failure to inform.

***E. Lack of jurisdiction by the trial court*** – Petitioner further moves to vacate his sentence on ground of lack of jurisdiction, asserting cryptically as follows:

> "Court lacks jurisdiction in that of bank robbery even though it was stipulated in court that the banks were FDIC insured now even though each of these has a history report where is the update reports that states that each of these banks were FDIC insured in 2006 (FDIC insurance at time of trial did not prove bank was insured at time of robbery) where as the dates that show for the Certificates all show a six and seven year gap so to say that these banks are FDIC insured in 2006 with out proof if they are or were still insured at the time of trial."

From this, Petitioner appears to contend the trial court did not have subject matter jurisdiction to hear the case because insufficient evidence was presented to show the banks allegedly robbed by Petitioner were FDIC insured. The Court does not agree. "Because proof of FDIC insurance is an element of the crime of bank robbery under 18 U.S.C. § 2113, . . . any challenge claiming that the government failed to prove at trial that essential element does not thereby undermine the court's subject-matter jurisdiction, or its power to hear the case. [A defendant's] assertion that the government's evidence did not adequately prove that the bank in question was FDIC insured at the time of the robbery is a simple question of the legal sufficiency of the government's evidence of one element of the charged offense." *U.S. v. Ratigan,* 351 F.3d 957, 964 (9th Cir. 2003). Accordingly,

---

[3] Ninth Circuit Rule 4-1, subdivision (e), provides in pertinent part as to post-appeal criminal proceedings: "If the decision of this Court is adverse to the client, in part or in full, counsel, whether appointed or retained, shall, within 14 days after entry of judgment or denial of a petition for rehearing, advise the client of the right to initiate further review by filing a petition for a writ of certiorari in the United States Supreme Court. *See* Sup. Ct. R 13, 14."

18

Petitioner is not entitled to vacate his sentence on ground of lack of jurisdiction.

To the extent Petitioner intends to suggest he should not have been convicted of robbery because the government did not present sufficient evidence of FDIC insurance, the claim likewise fails. The Court has reviewed the record and finds the parties, through their attorneys, stipulated at trial that the deposits of the banks were insured by the FDIC at the time they were allegedly robbed by Petitioner. The stipulation effectively relieved the government of its obligation to show the banks were federally insured. *See U.S. v. Muse,* 83 F.3d 672, 679 (4th Cir. 1996) ("Because a stipulation induces the government not to offer evidence to prove the facts involved in the stipulation, a defendant may not argue at trial or on appeal that the stipulation is insufficient to prove beyond a reasonable doubt the facts or elements to which he has stipulated"); *accord U.S. v. Harrison,* 204 F.3d 236, 241 (D.C. Cir. 2000) ("[A] defendant, by entering into a stipulation, waives his right to assert the government's duty to present evidence to the jury on the stipulated element").

***F. Venue*** – Lastly, Petitioner moves to vacate his sentence on ground of improper venue, contending: "The crimes of bank robbery, attempted bank robbery and interference with commerce were committed in the Eastern District of California. Whereas the crimes were committed in Sacramento county, San Joaquin county, and Stanislaus county which the trial should have been held in the Eastern District court in Sacramento instead of the Eastern District of Fresno county over one hundred miles away from where the crimes were committed. and [sic] would be able to get a jury fair cross section of the community." Petitioner has provided no authority – and the Court's research reveals no authority – to support this proposition. Federal Rule of Criminal Procedure 18 provides in pertinent part, "Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18; *see* U.S. Const., art. III, § 2; *see also U.S. v. Cabrales,* 524 U.S. 1, 5, 118 S.Ct. 1772, 141 L.Ed.2d 1 (1998) ("Both Rule 18 of the Federal Rules of Criminal Procedure and the Constitution require that a person be tried for an offense where that offense is committed, . . . [and] the site of a charge offense must be determined

from the nature of the crime alleged and the location of the act or acts constituting it" (internal quotations and citations omitted)). The Court has reviewed the record and finds sufficient evidence from which the jury could reasonably have found the acts constituting the charged offenses were committed in the Eastern District. Consequently, venue lay in the Eastern District. Indeed, by contending the trial should have been conducted at the U.S. District Court in Sacramento, Petitioner essentially concedes venue was proper in this district; Petitioner simply contends the situs of the trial should have been in a different courthouse. As to venue within a district, Rule 18 provides: "The court must set the place of the trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." Fed. R. Crim. P. 18. Petitioner has provided no argument or evidence, however, to suggest considerations of convenience and the prompt administration of justice required the trial to be held in Sacramento. Accordingly, Petitioner is not entitled to vacate his sentence of ground of improper venue.[4]

## V. DISPOSITION

Based on the foregoing, the motion of petitioner Quentin I. Jackson to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 is DENIED.

IT IS SO ORDERED.

Dated: July 17, 2012

_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] Petitioner further contends trial counsel was ineffective in failing to request a change of venue. Given Petitioner has articulated no reason why venue might have been improper, failure to request a change of venue could not have constituted ineffective assistance of counsel.